**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 3 2022

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

EDDIE WILSON, personal representative of the estate of
DAVID WILSON, deceased and on behalf of the wrongful
death beneficiaries of DAVID WILSON                                          **PLAINTIFF**

v.                          Case No.: ___3:22-cv-00053   JM___

MARION SCHOOL DISTRICT,
APEX INSURANCE AGENCY, LLC, d/b/a
SUMMIT RISK SERVICES, and
JOHN DOE DEFENDANTS 1-3                                                      **DEFENDANTS**

This case assigned to District Judge ___Moody___
and to Magistrate Judge_____ ___Ervin___

**COMPLAINT**

**COMES the PLAINTIFF**, Eddie Wilson, Personal Representative of the Estate of David

Wilson, and on behalf of the wrongful death beneficiaries of David Wilson by and through his

attorney, Jared Woodard with Stanley + Woodard law firm, who brings his Complaint against

Defendants Marion School District, Apex Insurance Agency, LLC d/b/a Summit Risk Services,

and John Doe Insurance Company as follows:

## I.   INTRODUCTION

David Wilson, a 7th grade student at Marion Junior High School, was bullied, harassed, and

assaulted because of his race and gender stereotype. David did not meet the normal male gender

stereotypes for African American males living in the South. David's mother complained to the

principal about the physical abuse her son was receiving from other students, but the principal

1

failed to take adequate action and the bullying continued to occur. David became more and more despondent and without any respite from the bullying and harassment, eventually committed suicide. David's father, Eddie Wilson, brings forward this Complaint on behalf of his son's estate and on behalf of the wrongful death beneficiaries, due to the acts and omissions and deliberate indifference of the Defendant. Accordingly, Plaintiffs brings forth this lawsuit with Constitutional Claims, including 42 U.S.C. Section 1983, Title IX of the Education Amendments of 1972 20 U.S.C. §1681-1688 ("Title IX"), state and common law claims, and a request for equitable relief.

## II.   JURISDICTION

1)      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §§ 1331 and 1343 as the matters in controversy arise under the laws and rules of the United States Constitution.

2)      Furthermore, this Court has supplemental jurisdiction over state and common law claims pursuant to 28 U.S.C. §1367.

## III. VENUE

3)      Under 28 U.S.C. § 1391, venue is proper before this Court as the events giving rise to the Plaintiff's claims occurred in the Eastern District of Arkansas (Northern Division).

## IV. PARTIES

4)      David Wilson, deceased, was an African American male and citizen of the State of Arkansas. David lived with his mother and father, Mr., and Mrs. Eddie Wilson, in Marion, Crittenden County, Arkansas. During the 2019-2020 school year, David was a student in the 7th grade at Marion Junior High School in the Marion School District.

5)      Eddie Wilson is a citizen of the State of Arkansas in Crittenden County and brings forward this Complaint as the personal representative of his son's estate and on behalf of the wrongful death beneficiaries. **(Ex. 1)**.

6)      Defendant Marion School District is a government municipality organized under the laws of the State of Arkansas. The school district is responsible for development and implementation of policies and procedures for the schools within the district, including Marion Junior High School. Additionally, the school district is responsible for the training and supervision of staff at schools within the district. Defendant Marion School District may be served by a member of the school board, including Dr. Glen Fenter, also superintendent of the Marion School District, 200 Manor St., Marion, AR 72364.

7)      Defendant Apex Insurance Agency, LLC d/b/a Summit Risk Services (hereinafter Summit Risk Services) provides a policy of insurance for the Marion School District that covers some or all events alleged in the Complaint. It is anticipated that Defendant Marion School District will claim immunity from tort as provided in Ark. Code Ann. § 21-9-301. Plaintiff understands that Defendant Summit Risk Services provides liability insurance for Marion School District and may be pursued under the direct-action statute, § 23-79-210. Defendant Summit Risk Services may be served on Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring St., Little Rock, AR 72201.

8)      Pursuant to Ark. Code Ann. § 23-79-210(a)(1) (commonly known as the direct action statute), when liability insurance is carried by a school district not subject to suit for tort and a person suffers injury or damage on the account of wrongful conduct of the organization, then the person so injured or damaged shall have a direct cause of action against the insurer with which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy. The insurer shall be directly liable to the injured person for damages to the extent of the coverage in the liability insurance policy, and the plaintiff may proceed directly against the insurer regardless of the fact that the actual tortfeasor

3

may not be sued under the laws of the state. Ark Code Ann. § 23-79-210(a)(3).

9)     Pursuant to Ark. Code Ann. § 16-56-125 (commonly known as the John Doe statute), for the purposes of tolling the statute of limitations, any person may file a complaint stating his or her action in the appropriate court of the state, whenever the identity of the tortfeasor is unknown. As required by § 16-56-125(c), undersigned counsel has attached an affidavit that the identity of the tortfeasor is unknown. **(Ex. 2).** In light of other potential Defendants, including students, faculty, and insurance company Defendants to be named under § 23-79-210, Plaintiff has named John Doe Defendants 1-3.

## V.  TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 AND TITLE

## IX OF THE EDUCATION AMENDMENTS OF 1972

Title VI of the Civil Rights Act of 1964 (Title VI), 42 USC 2000d, et seq. prohibits discrimination based on race, color, or national origin in any program or activity that receives Federal funds or other Federal financial assistance.

Title IX of the Education Amendments of 1972 is codified at 20 U.S.C. sections 1681 through 1688 and states as follows:

"No person in the United States shall, on the basis of gender, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance."

10)     The above federal laws are intended to remedy the effects of discrimination based upon race, sex, gender, or gender stereotypes. Moreover, these laws are designed to assure that a student is not a victim of bullying, harassment, or assault because of his or her membership in a protected class.

11)     The United States Department of Education ("DOE") promulgated rules to help

4

implement Congress' intent at 34 C.F.R. §106.1, which became effective as early as July 1, 1975. From the inception of Title IX, the United States Department of Education ("DOE") in their Office for Civil Rights (OCR) issued policy guidance on discriminatory harassment. They did so on discrimination based upon race (*see* 59 Fed. Reg. 11448 (Mar. 10, 1994) and later regarding harassment based upon sex ["Title IX"] (*see* 62 Fed. Reg. 12034 [Mar. 13, 1997]).

12)    A School must have a Title IX Coordinator, 34 C.F.R. § 106.8 whose duty it is, among other things, to assure that students and their parents receive notice of their *due process rights* under the statute and its implementing regulations, 34 C.F.R. § 106.9 including and especially notice of the school's complaint procedure. 34 C.F. R. § 106.9.  During an investigation of a formal Title IX complaint, a school must provide a party whose participation is invited or expected written notice of the date, time, location, participants, and purpose of all hearings, investigative interviews, or other meetings, with sufficient time for the party to prepare to participate. 34 C.F.R. §106.45(b)(5)(v).

13)    After holding public hearings, the DOE issued policy guidance on discriminatory harassment based upon sex and gender ["Title IX"]; 62 Fed. Reg. 12034 (1997).  First and foremost, the school must provide a parent notice of his or her *due process rights* including an explanation of such rights as noted above, notice of who the Title IX Coordinator for the School, how to contact that person, the grievance procedure itself, the right to get an investigatory report when completed and to appeal the findings, (p. 12038, Col. III; p. 12040, Col. I-II; p. 12043, Col. II; p. 12044, Col. II-III; p. 12045, Col. I-II), as contemplated by Title IX's implementing regulations.  Additionally, a School has a duty to the "immediate and appropriate steps to promptly investigate (p. 12039, Col. III;;p. 12042 (Col. II-III) ..." the allegations, end any harassment "and prevent harassment from occurring again....  and the steps to remedy (p. 12037) the effects of the

5

harassment" which includes, among other things, to contact the parent." (p. 12042, Col. II-III; p. 12043, Col. III; p. 12044, Col. III).

14)     Early on, the United States Department of Education ("DOE") *Office of Civil Rights* ("OCR") provided guidance to public school districts across the country by issuing what have been called the *Dear Colleague Letter.* The DOE has provided ongoing leadership with these directives for now over twenty years.

15)     This *Guidance* from the OCR makes clear that school personnel must understand their legal obligations to address harassment based upon sex, gender, and gender stereotypes. It lists several examples of effective actions including most importantly timely and impartial investigations. Additionally, it provided further direction on its specific obligations and reiterated that in completing an investigation the school should review the effect of the bullying and sexual harassment on the child's education; the type, frequency and duration of the conduct, the number of individuals involved, the location of incidents and the "totality of the circumstances." Importantly, the School is required to provide prompt and effective action, let a family know of the harassment the child was experiencing in a timely manner and provide information about their procedural rights under the regulations including and especially a grievance process.

16)     Last, if a student has been a victim of harassment, the school district has several potential interventions that may be implemented to protect the student from further harassment and intimidation or to mitigate any damages. An essential part of a school's duty is to provide ongoing assessment and follow up inquiries, as to the effectiveness or ineffectiveness, of any remedy actually or attempted to be provided. It reinforced the need for a strong Title IX Compliance Coordinator to assure that the school followed the various directives developed by the OCR. Importantly, a school must provide to parent complaining that their child was a victim of

6

harassment by another student, information of any disciplinary action the school district took against an offending student.

17)     Defendant Marion School District failed to comply with the above requirements, notices, and measures of Title IX resulting in continued bullying, harassment, and embarrassment and ultimately causing depression, disengagement, and eventually self-harm.

## VI. STATEMENT OF FACTS

18)     David Wilson was born on November 2, 2006. He tragically died after attempting suicide on March 19, 2020.

19)     David was a compassionate twelve-year-old boy who loved to read, had a great sense of humor, loved kids, was outgoing and extremely bright. David was an excellent student, in the school band, and selected to be in the school gifted and talented program. David had three older siblings, two loving parents and a bright future ahead.

20)     David Wilson was not your stereotypical 12-year-old black male growing up in the delta region of Northeast Arkansas. David enjoyed reading novels, wore glasses, was active in church, and had little participation in sports. David was more mature and had different interests than his peers. As a result, he was bullied, harassed, and assaulted because of his failure to conform to a gender stereotype.

21)     On or around January 2020, David's mother received a call from the assistant principal, Ricky Everett, that her son had been involved in an incident with other 7th grade students. Three to four boys had apparently jumped David in the locker room, knocked him to the ground and punched him repeatedly.

22)     Mr. Everett also called David's father at work the day of the incident. Mr. Everett advised that school staff should have been present in the locker room, but they were not. There

7

was video of the incident, but Mr. Wilson was advised that he could not view the video because of privacy reasons. Mr. Everett finally advised that he could not communicate what actions would be taken against the students or identify the students involved because they were minors.

23)    The next morning, Mrs. Wilson visited the school and discussed the incident with Mr. Everett, including a video of what occurred in the locker room. Mrs. Wilson understood she was not allowed to view the video because of privacy reasons. Mr. Everett explained that he no longer had the video and that Mrs. Wilson needed to talk to the principal, James Scott. Mrs. Wilson then met with Mr. Scott, and he advised that he no longer had the video.

24)    Mr. Wilson eventually did see the video as it was circulating via Snap Chat. A screenshot of the video is attached to the Complaint. **(Ex. 3)**. As reflected in the video, 7th grade Coach Ethan Horton was standing by the doors just outside the locker room when the boys ran from the locker room to the gym.

25)    Mrs. Wilson asked the principal what changes were going to be made to prevent further bullying to occur to her son and other students. The principal advised that he could not disclose what changes, remedies, or other interventions would be put in place to prevent these incidents from occurring again. Despite the school having notice of the bullying and the concerns voiced from Mrs. Wilson, the Wilson family never heard back from the school, including how the bullying, harassment, and physical assaults David suffered would be addressed and hopefully prevented in the future.

26)    Unbeknownst to Mr. and Mrs. Wilson at the time, David was continuing to be bullied at school, including in the hallways, locker room, and after football practice. They noticed a change in their son's demeanor, including having his head down at the table at home and becoming more withdrawn, but had no clue he was continuing to be tormented at school and

8

contemplating self-harm. The Wilson family relied on the school to address the bullying, implement appropriate interventions, and keep them posted with how things were going with their son.

27)     On March 12, 2020, David attempted suicide, and on March 19, 2020, he passed away.

28)     Following David's death, Mr. Wilson received a different video of David being bullied, harassed, and punched inside the locker-room. During both incidents, it appears the kids were unsupervised and there was no faculty or staff present. A screenshot of the video is attached to the Complaint. **(Ex. 4)**.

29)     At least two of David's classmates advised Mr. Wilson that David was bullied on a regular basis and would come to band class crying or in a visibly emotional state.

30)     Mr. Wilson spoke to several other parents who advised their children were also bullied within the Marion school district, despite the school promoting and advertising a "zero tolerance" bullying policy.

31)     Mrs. Wilson was actively involved in David's education and parent teacher meetings, yet Mr. and Mr. Wilson received only one call, from the assistant principal, regarding this unimaginable tragedy. To this day, Mr. and Mrs. Wilson have no clue how the school could continue to allow their son to be assaulted, harassed, and bullied without aggressive implementation of appropriate interventions and advising them of same.

## VII. CONSTITUTIONAL CLAIMS

32)     David Wilson had a well-established right to bodily integrity pursuant to the *Due Process Clause* 14th Amendment to the United States Constitution. Additionally, he had a liberty interest in freedom of movement, also pursuant to *Due Process Clause* 14th Amendment.

9

33)    The teachers, coaches, and/or staff knew of the bullying that David was experiencing but failed to take appropriate actions to prevent it. Defendant Marion School District acted with deliberate indifference in its failure to take sufficient action to prevent such conduct from occurring in the future. Accordingly, the representative of his estate seeks recovery for his injuries pursuant to 42 U.S.C. §1983.

34)    Defendant Marion School District had several written policies and procedures in place to purportedly prevent students, from suffering physical abuse, bullying, embarrassment, harassment, and assault from other students. The Marion Junior High School handbook (hereinafter "handbook"), including pages 76-80, specifically addresses "bullying" and "harassment", including providing definitions of same. **(Ex. 5)**.

35)    As reflected in the Marion handbook and acknowledged by Defendant, "Bullying creates an atmosphere of fear and intimidation, robs a person of his/her dignity, detracts from the safe environment necessary to promote student learning, and will not be tolerated by the Board of Directors. Students who bully another person shall be held accountable for their actions."

36)    Pursuant to Ark. Code Ann. § 6-18-514(d)(F), the above policies and procedures shall require that copies of the [n]otice of what constitutes bullying, that bullying is prohibited, and that the consequences of engaging in bullying be conspicuously posted in every classroom, cafeteria, restroom, gymnasium, auditorium, and school bus in the district.

37)    The above statute also requires that copies of the notice of what constitutes bullying, the prohibition of bullying, and the consequences of engaging in bullying be provided to parents and legal guardians, students, school volunteers, and employees of the public school annually. Ark. Code Ann. § 6-18-514(d)(G)(i).

38)    The above policies and procedures are intended to protect the constitutional rights

10

of the students. But the staff of Marion District Schools were obviously not properly trained and/or supervised in how to assure such policies and procedures were implemented and followed, including consistent with the statutory requirements described above. As such, Defendant is responsible for Plaintiff's injuries pursuant to 42 U.S.C. §1983.

## VIII. CLAIMS PURSUANT TO 20 U.S.C. §§ 1681-1688 AND THE EDUCATION AMENDMENT ACTS OF 1972

39)     Plaintiffs incorporate by reference the above paragraphs as if set forth herein.

40)     Plaintiffs contend that Defendant Marion School District was acting under color of law and deprived David Wilson of rights and privileges secured to him by Title IX of the Education Amendments Act of 1972 and by other laws of the United States by discriminating against him based on race, gender, and gender stereotypes.

41)     Pursuant to the United States Supreme Court, a federal funding recipient, including a public school district, may be liable in monetary damages under Title IX of the Education Amendments of 1972 for deliberate indifference to known instances of student-on-student harassment based on a federally protected class, but only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victims' access to an educational opportunity or benefit. *Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 633 (1999). As reflected in the videos and testimony from students, the school was made aware that David was repeatedly jumped, beaten, harassed, embarrassed, and bullied while a 7th grade student at Marion Junior High. The school's failure to appropriately discipline the offending students and aggressively implement interventions to prevent such conduct from occurring again, more than chins the pole for the deliberate indifference standard as discussed above in *Davis*.

42)     The acts and omissions of the Defendant deprived David Wilson of his right to not

11

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, based on race, sex, and/or gender stereotypes for which the school is liable to the estate of David Wilson pursuant to 20 U.S.C §1681-1688 for compensatory damages.

## IX.   ARKANSAS STATUTES RE: BULLYING

43)     The State of Arkansas has recognized the importance in addressing and educating its citizens regarding increased bullying within the school system.  Pursuant to Ark. Code Ann. § 6-18-514, [t]he General Assembly finds that every public-school student in this state has the right to receive his or her public education in a public-school educational environment that is reasonably free from substantial intimidation, harassment, or harm or threat of harm by another student.

44)     If an alleged incident of bullying occurs during school hours, a public school principal or his or her designee who receives a credible report or complaint of bullying shall (1) as soon as reasonably practicable (A) report to a parent or legal guardian of a student believed to be the victim of an incident of bullying that his or her child is the victim in a credible report or complaint of bullying; and (B) prepare a written report of the alleged incident of bullying; and (2) promptly investigate the credible report or complaint. Ark. Code Ann. § 6-18-514(d).

45)     Following completion of the above investigation, a public school district building-level administrator (hereinafter "administrator") or his or her designee may without limitation: (a) provide intervention services, (b), establish training programs to reduce bullying, (c), impose discipline on any of the parties involved in the incident of bullying; (d) recommend counseling for any of the parties involved in the incident of bullying; or (e) take or recommend other appropriate action. Ark. Code Ann. § 6-18-514(d).

46)     The administrator must also notify the parent or legal guardian of the student who

12

is determined to have been the perpetrator of the incident of bullying. Ark. Code Ann. § 6-18-514(e).

47)     Pursuant to Ark. Code Ann. § 6-17-711, [t]he Division of Elementary and Secondary Education shall require two hours of professional development in the following areas for licensed public-school personnel according to the professional development schedule under § 6-17-709: bullying prevention and 2) recognition of the relationship between incidents of bullying and the risk of suicide.

## X.  WRONGFUL DEATH

48)     As a result of the wrongful death of David Wilson, the wrongful death beneficiaries suffered significant damages, including termination of the parent-child and familial relationship, severe mental anguish, and will continue to suffer damages in the future as a direct result of the wrongful death of the child.  Additionally, on behalf of the wrongful death beneficiaries, Plaintiff seeks damages for loss of companionship and society, both past and future.

49)     Teachers, faculty, coaches, staff, and other employees of Marion School District acted with deliberate indifference regarding the acts, omissions, and failures to comply with the school district policies and procedures. Pursuant to the doctrine of Respondeat Superior, Defendant Marion School District is responsible for the acts, omissions, and wrongful conduct of its employees while in the scope of their employment.

50)     As described above, employees of Defendant Marion School Difference acted with deliberate indifference resulting in the direct and proximate cause of the injuries and damages sustained by the estate of David Wilson, deceased and the wrongful death beneficiaries of David Wilson.

## XII.  DAMAGES

51)     Plaintiff incorporates by reference all the above-related paragraphs with the same force and effect as if herein set forth.

52)     As a direct and proximate result of the conduct of Defendant Marion School District, Plaintiff, on behalf of the estate and wrongful death beneficiaries, has suffered injuries and damages, for which he is entitled to recover, including but not limited to the following: physical pain in the past; medical/counseling expenses in the past and future; mental and emotional anguish in the past and future; loss of life; loss of companionship in the past and future; funeral expenses, punitive damages, and other appropriate damages as allowed by law.

## XII.  ATTORNEY FEES

53)      It was necessary for Plaintiff to retain the undersigned attorneys to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs pursuant to Title IX and pursuant to 42 U.S.C. § 2000 et seq.

## XIII. EQUITABLE RELIEF

54)     In addition to the above, Plaintiff respectfully requests the Court considering ordering the Defendants to:

a.      Adopt an anti-bullying and harassment program that is provided by a third-party, including the Anti-Defamation League or the Southern Poverty Law Center.

b.      Adopt policies, procedures, and practices commensurate with the Dear Colleague Letter from the United States Department of Education Office for Civil Rights to include but not be limited to:

i.       The provision of school assemblies and instruction on bullying;

14

ii.      addressing bullying and harassment based upon disability or race or gender or common stereotypes that accompany those subjects in classroom intervention settings;

iii.      conducting an assessment at each campus;

iv.      forming a prevention coordination team at each school;

v.      including language specifically identifying bullying and harassment based upon disability or race or gender and common stereotypes that accompany those subjects in the school rules and student handbook;

vi.      develop a strategy to prevent such bullying or harassment in hot spots;

vii.      post signs in classrooms prohibiting bullying and harassment and listing its consequences; and

viii.      provide a place and manner of confidential reporting and encouraging students to help classmates who are being bullied and harassed and to report such bullying and harassment;

c.      That for the next three years the school provide for a school-safety coordinator for each Campus, to assure that the program is enacted comprehensively.

d.      That they retain a neutral third party to complete a bullying assessment for each campus and have that person or entity report back to the President of the School Board and Superintendent so they may address any issues noted in the assessment.

e.      That staff receive "Diversity training" by a third party to include information about gender, race, and disability stereotypes;

f.      That the school provide a marker in the school library, where books and other materials would be made available to students dealing with bullying harassment,

15

and related emotional concerns and issues related to gender, race, and disability along with common stereotypes that accompany those subjects;

g.     That Anti-bullying month be recognized by the Defendant school;

h.     That the school help facilitate the provision of counseling services for students deemed to be at risk; and

That the School Board appoint a committee including interested members of the public to address the issues noted herein, report back to the Board and act accordingly.

## XIV. DEMAND FOR JURY TRIAL

55)     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

## PRAYER

**WHEREFORE**, Plaintiff, Eddie Wilson, on behalf of the estate of David Wilson and the wrongful death beneficiaries of David Wilson, prays for judgment against the Defendants in an amount sufficient to fully compensate them for the above damages, recovery of attorney's fees and costs for the preparation and trial of this cause of action, punitive damages, and for its appeal if required, pursuant to Title IX, 42 U.S.C. §1983, 1988 and 42 U.S.C. §2000d et seq.; together with pre- and post-judgment interest, and court costs expended herein, as well as the equitable relief described above; and for such other relief as this Court in equity, deems just and proper and for such other relief as the Court may deem just and proper in law or in equity or in both.

Respectfully submitted,

**PLAINTIFF**, Eddie Wilson, personal representative of the estate of David Wilson, and on behalf of the wrongful death beneficiaries of David Wilson

**Attorney for PLAINTIFF**

Jared Woodard (2004148)
**STANLEY + WOODARD, PLC**
326 S. Church Street
Jonesboro, Arkansas, 72401
870.932.2000 (office)
jared@stanleywoodard.com

17

ELECTRONICALLY FILED
Crittenden County Circuit Court Probate Division
Paula Brown, County Clerk
2021-Oct-13  15:16:06
18PR-21-246
C02D04 : 2 Pages

## IN THE CIRCUIT COURT OF CRITTENDEN COUNTY, ARKANSAS
## PROBATE DIVISION

**IN THE MATTER OF THE ESTATE OF**
**DAVID ISAIAH WILSON, DECEASED**                         **18PR-2021-246**

### ORDER FOR APPOINTMENT OF SPECIAL ADMINISTRATOR

On this ___ day of _____, 2021, comes on for hearing the Petition of Eddie

Wilson, asking for appointment as Special Administrator of the Estate of David Isaiah Wilson,

who died on March 19, 2020, and who resided in Crittenden County, Arkansas, at the time of

his death.  This matter is presented and submitted to the Court upon said verified Petition;

and from said Petition, and other matters and things before the Court, the Court finds:

1.      That Eddie Wilson is a fit and proper person to be appointed Special

Administrator of the Estate of the decedent, and that he be allowed to serve without bond,

and that the Clerk of this Court should issue Letters of Special Administration to Eddie

Wilson as the Special Administrator of the Estate of the decedent.

IT IS, THEREFORE, CONSIDERED, ORDERED, AND ADJUDGED that Eddie Wilson be,

and is hereby appointed Special Administrator of the Estate of David Isaiah Wilson, that the

Clerk of this Court is hereby directed to issue Letters of Special Administration, and that the

Petitioner be allowed to serve without the necessity of filing bond.


_____
Honorable Cindy Thyer
Circuit Judge


EXHIBIT
1



Arkansas Judiciary

**Case Title:**   DAVID ISAIAH WILSON

**Case Number:**   18PR-21-246

**Type:**   ORDER APPT ADMINISTRATOR/IX

So Ordered

Judge Cindy Thyer

Electronically signed by CGTHYER on 2021-10-13 15:16:11    page 2 of 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**EDDIE WILSON, personal representative of the estate of
DAVID WILSON, deceased and on behalf of the wrongful
death beneficiaries of DAVID WILSON**                              **PLAINTIFF**


v.                                    **Case No.: _____**


**MARION SCHOOL DISTRICT,
APEX INSURANCE AGENCY, LLC, d/b/a
SUMMIT RISK SERVICES, and
JOHN DOE DEFENDANTS 1-3**                                   **DEFENDANTS**

<u>**AFFIDAVIT**</u>

1)      My name is Jared Woodard and I have practiced law for over seventeen years and currently in good standing in the state of Arkansas.

2)      We are filing a wrongful death action in Federal Court against the Marion School District, including claims of violation of constitutional rights stemming from bullying of a 7th grader.

3)      In light of Ark. Code Ann. § 23-79-210, we are required to name the liability insurance carrier(s) for entities that are not subject to suit for tort, including a school district.

4)      Further, there may be individuals within the school district that may be named Defendants, but their identities have not been confirmed.

5)      Pursuant to Ark. Code Ann. § 16-56-125(c), after research and due diligence, the identity of all potential tortfeasors and Defendants are unknown.


     **FURTHER AFFIANT SAYETH NOT**

Jared Woodard

**EXHIBIT 2**

**VERIFICATION**

STATE OF ARKANSAS
COUNTY OF _Craighead_

     Comes _Jared Woodard_, and after first being duly sworn, states on oath that the matters, figures and things contained in the foregoing *Affidavit* are true and correct to the best of my knowledge, information and belief.

_____
Jared Woodard

Subscribed and sworn to before me this _3rd day of March, 2022_



_____
Notary Public

My Commission Expires:

SARA COOK
MY COMMISSION # 12361219
EXPIRES: February 15, 2029
Craighead County









**MARION**

**SCHOOL DISTRICT**

**2020-2021**



# 7-12 STUDENT HANDBOOK

Marion Junior High School
Marion High School



piece shoulder covering is clarified to mean that straps must be three fingers wide. This clarification is to mitigate against any unnecessary showing of cleavage and/or one's undergarments.

While on the school grounds, during the school day, and at school-sponsored events, students are prohibited from wearing clothing that exposes underwear, buttocks, or the breast of a female.

**Approved team apparel may be worn on game days only at the discretion of the building principal.**

Students dressed inappropriately at any extracurricular school activity will be asked to comply immediately with policy or leave the event (no refund for gate admission).

**Board Approved**: 6-26-08 **Revised**: 6-11-09 **Revised**: 7-19-11

## Behavior and Consequences not covered in the handbook

The school district reserves the right to punish behavior, which is subversive to good order and discipline in the school, even though such behavior and/or consequences are not specified in the handbook. Students committing behaviors such as the Physical Abuse of Staff; Possession, Sale, and Use of Alcohol/Drugs; Fighting, and Gang-Related Activity may be arrested by the Marion Police Department.

## Bullying
**Definitions**

"Attribute" means an actual or perceived personal characteristic including without limitation race, color, religion, ancestry, national origin, socioeconomic status, academic status, disability, gender, gender identity, physical appearance, health condition, or sexual orientation;

"Bullying" means the intentional harassment, intimidation, humiliation, ridicule, defamation, or threat or incitement of violence by a student against another student or public school employee by a written, verbal, electronic, or physical act that may address an attribute of the other student, public school employee, or person with whom the other student or public school employee is associated and that causes or creates actual or reasonably foreseeable:

- Physical harm to a public school employee or student or damage to the public school employee's or student's property;
- Substantial interference with a student's education or with a public school employee's role in education;
- A hostile educational environment for one (1) or more students or public school employees due to the severity, persistence, or pervasiveness of the act; or
- Substantial disruption of the orderly operation of the school or educational environment;

Examples of "Bullying" include, but are not limited to, a pattern of behavior involving one or more of the following:

1.      Cyberbullying;
2.      Sarcastic comments "compliments" about another student's personal appearance or actual or perceived attributes,
3.      Pointed questions intended to embarrass or humiliate,
4.      Mocking, taunting or belittling,
5.      Non-verbal threats and/or intimidation such as "fronting" or "chesting" a person,
6.      Demeaning humor relating to a student's actual or perceived attributes,
7.      Blackmail, extortion, demands for protection money or other involuntary donations or loans,
8.      Blocking access to school property or facilities,
9.      Deliberate physical contact or injury to person or property,
10.     Stealing or hiding books or belongings,
11.     Threats of harm to student(s), possessions, or others,
12.     Sexual harassment, as governed by policy 4.27, is also a form of bullying, and/or
13.     Teasing or name-calling related to sexual characteristics or the belief or perception that an individual is not conforming to expected gender roles or conduct or is homosexual, regardless of whether the student self-identifies as homosexual or transgender (Examples: "Slut", "You are so gay.", "Fag", "Queer").


"Cyberbullying" means any form of communication by electronic act that is sent with the purpose to:

o       Harass, intimidate, humiliate, ridicule, defame, or threaten a student, school employee, or person with whom the other student or school employee is associated; or
o       Incite violence towards a student, school employee, or person with whom the other student or school employee is associated.

Cyberbullying of School Employees includes, but is not limited to:

a.      Building a fake profile or website of the employee;
b.      Posting or encouraging others to post on the Internet private, personal, or sexual information pertaining to a school employee;
c.      Posting an original or edited image of the school employee on the Internet;
d.      Accessing, altering, or erasing any computer network, computer data program, or computer software, including breaking into a password-protected account or stealing or otherwise accessing passwords of a school employee;
e.      Making repeated, continuing, or sustained electronic communications, including electronic mail or transmission, to a school employee;
f.      Making, or causing to be made, and disseminating an unauthorized copy of data pertaining to a school employee in any form, including without limitation the printed or electronic form of computer data, computer programs, or computer software residing in, communicated by, or produced by a computer or computer network;
g.      Signing up a school employee for a pornographic Internet site; or

77

h.     Without authorization of the school employee, signing up a school employee for electronic mailing lists or to receive junk electronic messages and instant messages. Cyberbullying is prohibited whether or not the cyberbullying originated on school property or with school equipment, if the cyberbullying results in the substantial disruption of the orderly operation of the school or educational environment or is directed specifically at students or school personnel and maliciously intended for the purpose of disrupting school and has a high likelihood of succeeding in that purpose.

"Harassment" means a pattern of unwelcome verbal or physical conduct relating to another person's constitutionally or statutorily protected status that causes, or reasonably should be expected to cause, substantial interference with the other's performance in the school environment; and

"Substantial disruption" means without limitation that any one or more of the following occur as a result of the bullying:

- Necessary cessation of instruction or educational activities;
- Inability of students or educational staff to focus on learning or function as an educational unit because of a hostile environment;
- Severe or repetitive disciplinary measures are needed in the classroom or during educational activities; or
- Exhibition of other behaviors by students or educational staff that substantially interfere with the learning environment.

Respect for the dignity of others is a cornerstone of civil society. Bullying creates an atmosphere of fear and intimidation, robs a person of his/her dignity, detracts from the safe environment necessary to promote student learning, and will not be tolerated by the Board of Directors. Students who bully another person shall be held accountable for their actions whether they occur on school equipment or property; off school property at a school sponsored or approved function, activity, or event; going to or from school or a school activity in a school vehicle or school bus; or at designated school bus stops.

Students are encouraged to report behavior they consider to be bullying, including a single action which if allowed to continue would constitute bullying, to their teacher or the building principal. The report may be made anonymously. Teachers and other school employees who have witnessed, or are reliably informed that, a student has been a victim of behavior they consider to be bullying, including a single action which if allowed to continue would constitute bullying, shall report the incident(s) to the building principal, or designee, as soon as possible. Parents or

legal guardians may submit written reports of incidents they feel constitute bullying, or if allowed to continue would constitute bullying, to the building principal, or designee.

The person or persons reporting behavior they consider to be bullying shall not be subject to retaliation or reprisal in any form.

A building principal, or designee, who receives a credible report or complaint of bullying shall:

1. As soon as reasonably practicable, but by no later than the end of the school day following the receipt of the credible report of bullying:
   a. Report to a parent, legal guardian, person having lawful control of a student, or person standing in loco parentis of a student that their student is the victim in a credible report of bullying; and
   b. Prepare a written report of the alleged incident of bullying;
2. Promptly investigate the credible report or complaint of bullying, which shall be completed by no later than the fifth (5th) school day following the completion of the written report.
3. Notify within five (5) days following the completion of the investigation the parent, legal guardian, person having lawful control of a student, or person standing in loco parentis of a student who was the alleged victim in a credible report of bullying whether the investigation found the credible report or complaint of bullying to be true and the availability of counseling and other intervention services.
4. Notify within five (5) days following the completion of the investigation the parent, legal guardian, person having lawful control of the student, or person acting in loco parentis of the student who is alleged to have been the perpetrator of the incident of bullying:
   a. That a credible report or complaint of bullying against their student exists;
   b. Whether the investigation found the credible report or complaint of bullying to be true;
   c. Whether action was taken against their student upon the conclusion of the investigation of the alleged incident of bullying; and
   d. Information regarding the reporting of another alleged incident of bullying, including potential consequences of continued incidents of bullying;
5. Make a written record of the investigation, which shall include:
   a. A detailed description of the alleged incident of bullying, including without limitation a detailed summary of the statements from all material witnesses to the alleged incident of bullying;
   b. Any action taken as a result of the investigation; and
6. Discuss, as appropriate, the availability of counseling and other intervention services with students involved in the incident of bullying.

Students found to be in violation of this policy shall be subject to disciplinary action up to and including expulsion. In determining the appropriate disciplinary action, consideration may be

given to other violations of the student handbook which may have simultaneously occurred.  In addition to any disciplinary actions, the District shall take appropriate steps to remedy the effects resulting from bullying.

Notice of what constitutes bullying, the District's prohibition against bullying, and the consequences for students who bully shall be conspicuously posted in every classroom, cafeteria, restroom, gymnasium, auditorium, and school bus.  Parents, legal guardians, person having lawful control of a student, persons standing in loco parentis, students, school volunteers, and employees shall be given copies of the notice annually.

The superintendent shall make a report annually to the Board of Directors on student discipline data, which shall include, without limitation, the number of incidents of bullying reported and the actions taken regarding the reported incidents of bullying.

Copies of this policy shall be available upon request.

**Legal References:**     A.C.A. § 5-71-217, A.C.A. § 6-18-514

DESE Rules Governing Student Discipline and School Safety

**Date Adopted:  5/21/2020**

## Corporal Punishment

The Marion School Board authorizes the use of corporal punishment to be administered in accordance with this policy by the Superintendent or the superintendent's designated staff members who are required to have a state-issued license as a condition of their employment.

Prior to the administration of corporal punishment, the student receiving the corporal punishment shall be given an explanation of the reasons for the punishment and be given an opportunity to refute the charges.

All corporal punishment shall be administered privately, i.e. out of the sight and hearing of other students, shall not be excessive, or administered with malice, and shall be administered in the presence of another school administrator or designee who shall be a licensed staff member employed by the District.